2006 ND 17

**Kim Marie KORYNTA, Plaintiff and Appellee**

v.

**Cameron Jon KORYNTA, Defendant and Appellant.**

No. 20050201.

Supreme Court of North Dakota.

Jan. 31, 2006.

Patti J. Jensen of Galstad, Jensen & McCann, PA, East Grand Forks, Minn. for defendant and appellant; submitted on briefs.

Janis Martha DeRemer, Buxton, N.D. for plaintiff and appellee; submitted on briefs.

MARING, Justice.

[¶ 1]   Cameron Korynta appeals from a trial court's order denying his motion for new trial or for reconsideration and order for amended judgment nunc pro tunc.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2]   Cameron and Kim Korynta were married in November 1995.  At the time, Kim had a daughter from a previous marriage.  Cameron adopted this daughter in 1997.  During the marriage, the couple had four additional children.

[¶ 3]   Kim filed for a divorce on November 14, 2003.  A temporary order was entered on February 11, 2004, following cross motions for entry of an interim order.  An amended temporary order was filed March 10, 2004.  The temporary orders addressed temporary custody, child support, and related issues.  A trial was held on August 3, 4, and 25, and September 14, 2004.  The trial court entered its findings of fact, conclusions of law, and order for entry of judgment on January 31, 2005.  Judgment was entered February 8, 2005.

[¶ 4]   Cameron moved for a new trial or, in the alternative, for amended findings and conclusions and moved for reconsideration under Rule 59, N.D.R.Civ.P., on March 4, 2005.  The trial court entered an order denying Cameron's motions with the exception of clarifying that portion of the judgment concerning tax exemptions.  An amended judgment nunc pro tunc was filed July 19, 2005.

[¶ 5]   On appeal, Cameron argues the visitation schedule granted to him was not in the children's best interests, the trial court erred when it assigned a negative valuation to a business Kim owned when calculating its distribution of marital assets, and the trial court's calculation of his income for child support purposes was incorrect.  He does not raise any issue on appeal with regard to the trial court's clar-

ification of its judgment in its order for judgment nunc pro tunc.

## II

[¶ 6] Cameron appeals from the trial court's order denying his Rule 59 motion for a new trial and ordering an amended judgment nunc pro tunc. He also appeals from the denial of his motion to reconsider, which is treated by this Court like a motion to amend or alter under Rule 59(j). *See Woodworth v. Chillemi,* 1999 ND 43, ¶ 7, 590 N.W.2d 446. Cameron's notice of appeal does not include any mention of the trial court's February 8, 2005, judgment.

[¶ 7] "The standard a district court applies when faced with a motion for a new trial, under N.D.R.Civ.P. 59, and the standard this Court applies when reviewing the district court's decision are distinct." *Brandt v. Milbrath,* 2002 ND 117, ¶ 23, 647 N.W.2d 674. "[T]he standard for reviewing an order denying a motion for a new trial is, after viewing the evidence in the light most favorable to the verdict, whether there is sufficient evidence to justify the verdict." *Id.* at ¶ 29. Here the case was tried to the court rather than a jury and we view the evidence in the light most favorable to the trial court's findings of fact. This Court reviews a trial court's denial of a N.D.R.Civ.P. 59(b) motion for a new trial under the abuse of discretion standard. *Schneider v. Schaaf,* 1999 ND 235, ¶ 12, 603 N.W.2d 869. Likewise, the decision of a trial court on a Rule 59(j) motion to amend is reviewed under the abuse of discretion standard. *Woodworth,* 1999 ND 43, ¶ 7, 590 N.W.2d 446. "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Schneider,* at ¶ 12.

## A

[¶ 8] Cameron argues the trial court erred in denying his motion because the visitation schedule approved by the trial court was not in the children's best interests. In essence, Cameron asserts the trial court should have kept the visitation schedule created by the February 11, 2004, temporary order. Under the temporary order, Kim and Cameron shared custody of the five children, with Cameron having the children in his care each week from the end of his work day on Thursday until 3 p.m. on Sunday. Under the visitation schedule set out in the subsequent judgment, this visitation was reduced. Cameron argues that, to interrupt a schedule that had been in place for the children for thirteen months, the trial court should have had some evidence it was not in the children's best interest.

[¶ 9] Kim counters, asserting Cameron was granted approximately 156 visitation nights per year in the amended temporary order. Cameron did not exercise all the visitation available to him under the temporary order and the judgment granted Cameron 125 nights per year plus Thursday evenings in off weeks. Kim asserts the trial court's visitation schedule is generous and the children are not deprived.

[¶ 10] In denying Cameron's motion for a new trial, the trial court explained its reasoning in deciding visitation stating it did not consider "shuttling the kids back and forth between two homes on a weekly basis as being in the children's best interest especially in view of the communication issues between the parties." The trial court also noted its decision was based, in part, on the parties' failure to keep the children out of the parties' conflicts with each other. We conclude the trial court did not abuse its discretion in denying the motion for a new trial or the motion to

alter or amend the judgment with regard to visitation.

### B

[¶ 11] Cameron argues the trial court erred when it assigned a negative valuation to Kim's business when calculating the distribution of marital assets. Cameron argues the court failed to state there was a shareholder loan taken out on the business of $12,059 and a loan of $28,659. Cameron further argues the court's decision is based on a bare assertion that the negative valuation was based on a tax return.

[¶ 12] Kim counters, asserting the trial court made great effort to explain its factual basis for the property valuation and division.

[¶ 13] In its order denying Cameron's Rule 59 motion, the trial court explains:

> The value of the *Dakota Shopper* was based upon the evidence presented during trial. As stated in paragraph 8 of the Court's Findings, the value was based upon the 2003 corporate tax return and the plaintiff's testimony. The defendant offered no testimony or evidence with regard to the value of the *Dakota Shopper*. Further, neither party provided any expert testimony with regard to valuation of this business.

A trial court's valuation of property is presumed correct and we view the evidence presented in the light most favorable to the trial court's findings of fact.

2000 Gross wages: $58,834 Farm net income: $ 805
2001 Gross wages: $61,498 Farm net income: $1,249
2002 Gross wages: $58,514 Farm net income: $1,635 Add'l emp. income $2,260
2003 Gross wages: $58,442 Farm net income: $1,755 Add'l emp. Income $ 748.

The trial court then takes Cameron's average gross pay per month for the period between January 1, 2004, and July 17, 2004, and multiplies it by 12, equaling "anticipated gross wages for 2004 of $71,786."

*Oldham v. Oldham,* 2004 ND 62, ¶ 14, 677 N.W.2d 196. We conclude the trial court did not abuse its discretion in denying the motion for a new trial or the motion to alter or amend the judgment concerning the valuation of Kim's business.

### C

[¶ 14] Cameron argues the trial court erred in the calculation of his income for child support purposes. Cameron argues the trial court's findings of fact show that, instead of using his income for the four years before trial to calculate his income for child support purposes, the trial court took a pay stub for the first six months of 2004 and extrapolated that amount out over twelve months. This, Cameron asserts, resulted in the court finding income in excess of $10,000 more than he had earned in the previous four years.

[¶ 15] Kim argues this calculation was correct because N.D. Admin. Code § 75–02–04.1–02(7), child support guidelines, state: "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." Kim appears to be arguing that extrapolating based on current wage statements is allowed by this language, although she does not cite to any authority to support her contention.

[¶ 16] In its findings of fact, the trial court found that Cameron's income since 2000 is:

The trial court continues that Cameron should recognize at least $1,755 in net farm income for 2004.

[¶ 17] This Court has stated:

To determine a child support obligation, a court must first calculate an obligor's gross income. Gross income is income from any source. An obligor's net income is used to compute the child support obligation. Net income is defined as gross annual income less various deductions and exemptions. A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines.

*Dufner,* 2002 ND 47, ¶ 24, 640 N.W.2d 694 (citations omitted) (citing *Hoverson v. Hoverson,* 2001 ND 124, ¶ 35, 629 N.W.2d 573; and N.D. Admin. Code § 75–02–04.1–01(5) and (7), and N.D. Admin. Code § 75–02–04.1–02(3)). Under N.D. Admin. Code § 75–02–04.1–02, the guidelines provide:

6. The annual total of all income considered in determining a child support obligation must be determined and then divided by twelve in order to determine the obligor's monthly net income.

7. Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income. Where gross income is subject to fluctuation, particularly instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided.

8. Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change

in the near future, consideration may be given to the likely future circumstances.

. . . .

10. Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined.

This Court has found it to be an error when a trial court extrapolates from less than a twelve-month period to determine imputed income under N.D. Admin. Code § 75–02–04.1–07(9). *See Brandner v. Brandner,* 2005 ND 111, ¶ 18, 698 N.W.2d 259; *Christoffersen v. Giese,* 2005 ND 17, ¶ 8, 691 N.W.2d 195; *Logan v. Bush,* 2000 ND 203, ¶ 21, 621 N.W.2d 314. Similarly, unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8). In this case, Cameron presented pay stubs for January 1, 2004, to July 17, 2004, in addition to his tax return statements for the prior four years. The trial court had ample and reliable information from which to calculate Cameron's income over the previous twelve months.

[¶ 18] "The failure to properly apply the child support guidelines to the facts involves an error of law." *In Interest of N.C.C.,* 2000 ND 129, ¶ 12, 612 N.W.2d 561. The trial court states no appropriate reasons for its extrapolation of Cameron's income. We therefore determine the trial court misapplied the law and reverse the trial court's decision on this issue and remand.

[¶ 19] On remand, in making its calculation of Cameron's correct support obligation, the trial court must also examine whether Cameron's child support should

be reduced due to extended visitation under N.D. Admin. Code § 75–02–04.1–08.1(1). Under the trial court's ordered visitation schedule, Cameron's total annual visitation would not meet or exceed the 164 nights per year that N.D. Admin. Code 75–02–04.1–08.1(1) states constitutes "extended visitation."

## D.

[¶ 20] Kim asks this Court to grant her attorney's fees, pursuant to N.D.R.App.P. 38, for what she says is Cameron's frivolous appeal. We deny Kim's request for attorney's fees.

## III

[¶ 21] We hold the trial court did not abuse its discretion in denying the motions for a new trial or to alter or amend its findings on the visitation and valuation of the Dakota Shopper. However, the trial court did misapply the law by extrapolating Cameron's 2004 income based on the first seven-and-a-half months of the year when it had evidence of his 2000 through July 2004 income. We therefore affirm in part and reverse and remand on the issue of Cameron's child support obligation.

[¶ 22] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.