2006 ND 46

**Meryem M. BERGE, Plaintiff and Appellant**

v.

**Mark A. BERGE, Defendant and Appellee.**

**No. 20050124.**

Supreme Court of North Dakota.

Feb. 23, 2006.

Christopher M. McShane (argued), third-year law student, Duane R. Breitling (appeared), Ohnstad Twichell, P.C., Fargo, N.D., and Mark Samuel Douglas (appeared), Child Support Enforcement Unit, Jamestown, N.D., for plaintiff and appellant.

Erin M. Conroy, Jeffries, Olson & Flom, PA, Fargo, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Meryem M. Berge appealed from an amended judgment setting Mark A. Berge's child support obligation at $572 per month. We conclude the trial court erred as a matter of law in calculating Mark Berge's child support obligation, and we reverse and remand for recalculation of his net income accompanied by an explanation of how the court determined the amount.

I

[¶ 2]· The parties married in 1981 and divorced in 1999. During the marriage, Mark Berge farmed near Litchville. At the time of the divorce, the trial court adopted the parties' stipulation and property settlement agreement, awarded Meryem Berge custody of the couples' two minor children, and ordered Mark Berge to pay Meryem Berge $526 per month in child support. The divorce decree awarded Mark Berge the farmland to allow him to continue the farming operation and ordered Mark Berge to pay Meryem Berge $150,000 "[t]o equalize the distribution of the marital estate." To pay the funds to Meryem Berge, Mark Berge increased his mortgage on the farmland.

[¶ 3] In 2001 Mark Berge found employment in Valley City, sold some of his farmland, and decided to farm only one quarter section of his land, renting the remainder of the land to others. In 2002 Mark Berge decided to discontinue his farming operation and began working full-time as a contractor for Pipeline Services of Iowa, an affiliate of Alliance Pipeline. He sold all of his farm equipment at an auction to lessen his debt load. As a result of these transactions, Mark Berge's 2001 and 2002 tax returns reflected large capital gains. Mark Berge continues to own 850 acres of farmland that he rents to others.

[¶ 4] In July 2004 Meryem Berge moved to modify Mark Berge's child support obligation under N.D.C.C. § 14–09–08.4 for the minor child who remained in her custody. At the September 2004 hearing on the motion, Mark Berge's tax returns for tax years 1999 through 2003, recent employee pay stubs, and child support guidelines worksheets were submitted. Following the hearing, Mark Berge's attorney sent the court a letter dated September 24, 2004, attempting to distinguish caselaw relied upon by Meryem Berge and setting forth Mark Berge's farm rental income from 1999 through 2003. The letter was accompanied by a pay stub and correspondence from Mark Berge's employer, and two sets of child support guidelines

worksheets. In one set of worksheets, Mark Berge's child support obligation is calculated to be $572 per month using a three-year average of his self-employment income, and in the other set of worksheets Mark Berge's obligation is calculated to be $540 per month using a five-year average of his self-employment income. These calculations apparently excluded the capital gains from Mark Berge's sale of farmland and equipment reflected in his 2001 and 2002 tax returns. In correspondence to the court dated September 17, 2004, Meryem Berge submitted a child support guidelines worksheet that apparently included Mark Berge's capital gains and used a five-year average of all of his income. Under Meryem Berge's calculations, Mark Berge's child support obligation was $942 per month.

[¶ 5] The trial court issued a memorandum decision in January 2005 stating:

> The above captioned matter came before this Court pursuant to the Plaintiff's Motion to Modify Judgment. All the information has now been received by the Court. The Court appreciates the parties' patien[ce] and determines that the appropriate support based upon the Defendant's calculations, as submitted with counsel's letter September 24, 2004, is $572.00 per month, which is retroactive to the month of August, 2004. The Motion was made on July 28, 2004. Counsel for the Plaintiff (IV–D Unit) shall prepare the appropriate Judgment papers consistent with this Memorandum Opinion.

Meryem Berge appealed.

## II

[¶ 6] Meryem Berge argues the trial court erred in computing the child support obligation because the court did not include capital gain income Mark Berge received when he sold the farmland and the farm equipment. She contends the court should have combined the capital gain income with wages he earned and rental income he received from the farmland and averaged that amount over a longer period of years to account for fluctuations in his income. In the alternative, Meryem Berge argues if Mark Berge's entire income is not averaged, the child support obligation should be based on his most recent earnings for a full one-year period. Meryem Berge also argues the trial court's decision should be reversed because the court failed to adequately explain how the child support obligation was calculated.

[¶ 7] Child support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to a clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to an abuse-of-discretion standard of review. *Bladow v. Bladow,* 2005 ND 142, ¶ 19, 701 N.W.2d 903 (citing *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215). Resolution of the issues raised by Meryem Berge is hampered by the cryptic nature of the trial court's decision.

[¶ 8] Under N.D. Admin. Code § 75–02.04.1–02(10), "[e]ach child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." Because a proper finding of net income is essential to determine the correct amount of child support under the child support guidelines, we have said that, as a matter of law, a trial court must clearly set forth how it arrived at the amount of income and the level of support. *See, e.g., Bladow,* 2005 ND 142, ¶ 19, 701 N.W.2d 903; *Olson v. Olson,* 2002 ND 30, ¶ 12, 639 N.W.2d 701; *Heinz v. Heinz,* 2001 ND 147, ¶ 17, 632 N.W.2d 443; *Lauer v. Lauer,* 2000 ND 82, ¶ 3, 609

N.W.2d 450; *Buchholz v. Buchholz,* 1999 ND 36, ¶ 12, 590 N.W.2d 215; *Berg v. Ullman ex rel. Ullman,* 1998 ND 74, ¶ 18, 576 N.W.2d 218. When a trial court does not clearly state how it calculated the amount of child support, this Court will reverse and remand for an explanation even if the record contains adequate evidence for the trial court to make a precise finding. *See Buchholz,* at ¶¶ 12, 17; *Wolf v. Wolf,* 557 N.W.2d 742, 744 (N.D.1996); *see also Heley v. Heley,* 506 N.W.2d 715, 721 (N.D.1993) ("A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines"); *Spilovoy v. Spilovoy,* 488 N.W.2d 873, 877 (N.D.1992) (same).

[¶ 9] The trial court in this case did not clearly state in its memorandum opinion how it calculated Mark Berge's child support obligation. The court simply adopted Mark Berge's calculations contained in one of the child support guidelines worksheets he provided to the court. The worksheets contain no explanation of how the various figures were calculated, what evidence supports their inclusion in the calculations, or what evidence supports the exclusion of other income. We conclude the trial court erred as a matter of law in setting Mark Berge's child support obligation, and we remand for the court to make the factual findings necessary to support a child support award.

### III

[¶ 10] We briefly address other issues raised which are likely to arise again on remand.

### A

[¶ 11] One troubling aspect about the trial court's adoption of Mark Berge's calculations is that he totally excluded his capital gain income from the sale of farmland in 2001 and from the sale of his farm equipment in 2002.

[¶ 12] "Income" for child support purposes is broadly defined in N.D.C.C. § 14–09–09.10(9) as:

> any form of payment, regardless of source, owed to an obligor, including any earned, unearned, taxable or nontaxable income, workforce safety and insurance benefits, disability benefits, unemployment compensation benefits, annuity and retirement benefits, but excluding public assistance benefits administered under state law.

Examples of "gross income" listed in N.D. Admin. Code § 75–02–04 .1–01(5)(b) include "gains." Support must be calculated on the obligor's "net income," which is "total gross annual income less" the exclusions allowed under N.D. Admin Code § 75–02–04.1–01(7). The child support guideline's definition of income is very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines. *Cook v. Eggers,* 1999 ND 97, ¶ 9, 593 N.W.2d 781.

[¶ 13] Under the child support guideline's all-inclusive definition of gross income, this Court has consistently held that nonrecurrent payments are includable in an obligor's income for determining child support. In *Otterson v. Otterson,* 1997 ND 232, ¶ 20, 571 N.W.2d 648, we held that proceeds from a personal injury settlement must be considered in calculating the obligor's income for child support purposes. In *Longtine v. Yeado,* 1997 ND 166, ¶ 9, 567 N.W.2d 819, we concluded that profits from an auction sale of farm machinery and the capital gain from insurance proceeds from a fire that destroyed the parties' former homestead must be considered in determining the obligor's

child support income. In *Helbling v. Helbling*, 541 N.W.2d 443, 447 (N.D.1995), this Court concluded that excess reimbursed relocation expenses paid by the obligor's employer must also be considered under the broad definition of gross income contained in the child support guidelines. As we said in *Otterson*, at ¶ 17, the "guidelines do not authorize a deduction for nonrecurrent payments, and our law and public policy dictate that children should share in the obligor's receipt of such payments."

[¶ 14] Mark Berge argues *Helbling* is no longer valid law because it was decided under the 1991 version of the child support guidelines, and the "guidelines were revised in 1995 and 2003 since the *Helbling* decision to reflect the legislature's consideration of the issue of non-recurrent payments." We acknowledge that the guidelines were amended in 1995, 1999, and 2003, but Mark Berge has not directed our attention to any new or altered guidelines that address nonrecurrent payments, and we have found none. "Gross income" continues to be broadly defined under the current version of the guidelines as including "gains." N.D. Admin. Code § 75–02–04.1–01(5)(b). Nonrecurrent payments still are not listed as excludable under N.D. Admin. Code § 75–02–04.1–01(7).

[¶ 15] To the extent Mark Berge is relying on N.D. Admin. Code § 75–02–04.1–02(8), we discussed this provision in *Longtine*, 1997 ND 166, ¶ 11, 567 N.W.2d 819. Section 75–02–04.1–02(8), N.D. Admin. Code, was adopted in 1995 to provide:

8. Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

In *Longtine*, at ¶ 12, a majority of this Court construed N.D. Admin. Code § 75–02–04.1–02(8) to not require a different result than in *Helbling* for the treatment of nonrecurrent income. The referee in *Longtine*, at ¶ 4, had included the capital gain and profit from the auction sale, less a debt repayment on a depreciable asset from the auction proceeds, in the child support determination and increased the obligor's child support based on the nonrecurrent income for only a twelve-month period. The majority of the Court held the "referee recognized the 'likely future circumstances' that those proceeds were nonrecurring and increased Longtine's child support obligation for one year to provide his children with a benefit from those proceeds." *Id.* at ¶ 13.

[¶ 16] It is unclear why the trial court excluded the 2001 and 2002 capital gains from the computation of Mark Berge's child support obligation. Neither the child support guidelines nor this Court's precedents allow nonrecurrent payments to be simply ignored in determining an obligor's child support obligation.

### B

[¶ 17] The trial court apparently based Mark Berge's annual income from employment on a mid-year pay stub rather than on his employment income reflected on his 2003 tax return.

[¶ 18] In *Korynta v. Korynta*, 2006 ND 17, ¶¶ 17–18, 708 N.W.2d 895, we concluded that the trial court misapplied the law in calculating the obligor's child support obligation by extrapolating income based on a recent pay stub for only a six-month period, where the record contained the obligor's tax returns for the prior four

years and the trial court provided no reasons for its extrapolation of income. We held, "unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." *Korynta,* at ¶ 17. *See also Helbling,* 541 N.W.2d at 448 (trial court erred in calculating an obligor's child support based on a pay stub reflecting only eight months of employment income by extrapolating that amount into a twelve-month figure where there was evidence in the record showing the obligor's total income for the prior year); *Brandner v. Brandner,* 2005 ND 111, ¶ 18, 698 N.W.2d 259 (because N.D. Admin. Code § 75–02–04.1–07(9) requires a court to calculate imputed income based on the obligor's actual income in a prior twelve-month period, a court cannot use income earned during less than the twelve-month period and extrapolate that to a twelve-month period); *Christoffersen v. Giese,* 2005 ND 17, ¶ 8, 691 N.W.2d 195 (same); *Logan v. Bush,* 2000 ND 203, ¶ 21, 621 N.W.2d 314 (same). Section 75–02–04.1–02(6), N.D. Admin. Code, has not been changed since *Helbling* was decided.

■ [¶ 19] It is improper to calculate an obligor's annual employment income based on a mid-year pay stub when, as here, the obligor's employment income is reflected on the prior year's tax return.

C

[¶ 20] Mark Berge argued that his farm rental income should be based on a three-year average of rental income rather than a five-year average, and the court apparently used the three-year average when it adopted Mark Berge's child support guidelines worksheet.

■ [¶ 21] "Self-employment" includes "any activity that generates income from rental property." N.D. Admin. Code § 75–02–04.1–01(10). Section 75–02–04.1–05(4), N.D. Admin. Code, provides:

4. Self-employment activities may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income. When self-employment activity has not been operated on a substantially similar scale for five years, a shorter period may be used.

Meryem Berge argued the trial court should not have averaged the self-employment income alone because Mark Berge currently owns 850 acres of farmland that he rents for $40 per acre and, therefore, the rental is not subject to fluctuation. If an obligor's most recent annual earnings are a more "reliable indicator of future circumstances," N.D. Admin. Code § 75–02–04.1–02(8), the most recent annual earnings may be used to calculate a child support obligation. *See Mahoney v. Mahoney,* 1997 ND 149, ¶ 19, 567 N.W.2d 206. Meryem Berge also argued the court should have averaged all of Mark Berge's income on a three-year or five-year basis because this would provide a more accurate basis for assessing his future earnings. The trial court must disclose its reasons for choosing one method over another.

IV

[¶ 22] We reverse the amended judgment and remand for recalculation of Mark Berge's net income accompanied by an explanation of how the court determined the amount.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.