# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2025 ND 48

---

Jason Derek Anderson,                                    Plaintiff and Appellant

  v.

Olivia Jean Foss,                                         Defendant and Appellee

  and

State of North Dakota,                           Statutory Real Party in Interest

---

### No. 20240008

---

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Susan L. Bailey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Lisa M. Benson, Fargo, ND, for plaintiff and appellant; submitted on brief.

Rachel M. Hanson, Fargo, ND, for defendant and appellee; submitted on brief.

**Anderson v. Foss**
**No. 20240008**

**Jensen, Chief Justice.**

[¶1]   Jason Anderson appeals from a second amended judgment and supplemental findings entered following remand from this Court. He argues the district court abused its discretion when setting the commencement date for the new child support obligation one year from the date of the motion to modify; erred in its child support determinations and in the amount owed to Olivia Foss for health insurance reimbursements; and erred in removing his ability to make day-to-day decisions of the minor child. We affirm.

I

[¶2]   Jason Anderson and Olivia Foss were never married but share one child together, L.A. A second amended judgment was entered awarding Olivia Foss sole decision-making responsibility including removing Jason Anderson's ability to make all day-to-day decisions, ordered Jason Anderson to pay Olivia Foss $2,086.90 for health insurance premiums, ordered Jason Anderson to ensure the minor child attends all extracurricular activities during his parenting time, and recalculated child support, from which Jason Anderson appealed. *Anderson v. Foss ("Anderson I")*, 2024 ND 154, 10 N.W.3d 570. Our prior decision in *Anderson I* sets forth relevant facts, which we repeat here only insofar as necessary to help resolve the issues raised in this appeal.

[¶3]   In *Anderson I*, 2024 ND 154, we affirmed the second amended judgment in part requiring Jason Anderson to take the child to extracurricular activities during his parenting time, and remanded with instructions that the district court make sufficient findings regarding the commencement date for modified child support, for further explanation on how it calculated Olivia Foss's child support obligation and health insurance reimbursement amount, and for an explanation of why all day-to-day decision-making was removed from one parent in a shared parenting plan. The district court issued supplemental findings.

1

[¶4]   In the second amended judgment, the modified child support obligation was commenced a year after Jason Anderson moved to amend child support. In *Anderson I*, we remanded for additional findings, explaining:

> Generally, a modification of child support should be made effective from the date of the motion to modify, absent good reason to set some other date, and the 'court retains discretion to set some *later effective date*, but its reasons for doing so should be apparent or explained. . . .
>
> . . . . Jason Anderson moved to amend the child support on August 4, 2022, and requested the district court to commence the modified support beginning September 2022. Without explanation, the court set a commencement date for the new child support obligation of September 2023. Because the court did not provide an explanation as to why it chose the September 2023 commencement date, as opposed to the date when the motion to amend was filed, we remand to the court for further explanation.

*Anderson I*, 2024 ND 154, ¶¶ 3-4.

[¶5]   Upon remand, the district court entered supplemental findings of fact. In this appeal, Jason Anderson asserts the district court abused its discretion in making the child support obligations effective one year after the motion to modify. A court's decision setting an effective date for a modified child support obligation is discretionary and will not be overturned on appeal absent an abuse of discretion. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 7, 710 N.W.2d 113. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *Datz v. Dosch*, 2014 ND 102, ¶ 22, 846 N.W.2d 724 (quoting *Wolt v. Wolt*, 2011 ND 170, ¶ 26, 803 N.W.2d 534).

[¶6]   The district court made the following supplemental findings of fact relevant to the commencement date issue:

Many factors contributed to the delayed resolution of the motion to modify child support, but it was due primarily to Jason's less than forthright explanation and documentation of his income, and Jason's lack of preparedness for examination and cross-examination on matters germane to his own motion. Other factors included the parties' inability to accurately estimate needed court time, the challenge of scheduling continued civil evidentiary hearings, and the court's difficulty in dedicating time to record review and drafting an order.

[¶7] We conclude the district court did not act in an arbitrary, unreasonable, or unconscionable manner; did not misinterpret or misapply the law; and its decision on the findings of fact on this issue, as supplemented on remand, is the product of a rational mental process leading to a reasoned determination.

III

[¶8] In modifying child support, the district court calculated Olivia Foss's child support based on a 32-hour work week at a rate of $37.97 per hour. In the first appeal, Jason Anderson argued the court erred in calculating Olivia Foss's child support obligation by using a partial year's income and limiting Olivia Foss's hourly pay to 32 hours a week without making findings necessary to support the use of the earnings for a partial year and less than a 40-hour work week. *Anderson I*, 2024 ND 154, ¶ 5. In *Anderson I*, ¶¶ 10-11, we explained:

At the evidentiary hearing, Jason Anderson offered a history of past earnings. The district court made no findings on whether or not Olivia Foss's past earnings were a predictor of her future income. Olivia Foss testified that she expects to work approximately 40 hours a week as is reflected in her recent paystubs submitted to the court. Without explanation, the court determined Olivia Foss's child support using a 32-hour work week.

. . . . The district court is required to explain why past income is an unreliable indicator of the obligor's future income and why the income it utilized in determining the child support obligation was appropriate. Further, because the court based the child support obligation on an income earned in less than a 12-month period and on hours that differed from the obligor's testimony, the court must

3

explain why it did not utilize the evidence it had to extrapolate Olivia Foss's income for a 12-month period. Finally, pursuant to N.D. Admin. Code § 75-02-04.1-02(9), the court must explain how it calculated an obligor's net income.

We concluded the court did not provide sufficient findings to allow proper appellate review of its decision, and we reversed and remanded with instructions to make the required findings. *Id.* ¶ 12.

[¶9] The district court entered supplemental findings and, in this appeal, Jason Anderson argues the court improperly determined Olivia Foss's income for child support purposes asserting her child support obligation should be calculated based on a 40-hour work week and $37.97 per hour.

[¶10] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Verhey v. McKenzie,* 2009 ND 35, ¶ 5, 763 N.W.2d 113 (quoting *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215). "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines." *Doepke v. Doepke,* 2009 ND 10, ¶ 6, 760 N.W.2d 131. The child support guidelines, found in N.D. Admin. Code ch. 75–02–04.1, were described in *Heinle v. Heinle,* 2010 ND 5, ¶¶ 37–38, 777 N.W.2d 590:

> The child support guidelines provide scheduled amounts of support based upon an obligor's net income. *See* N.D. Admin. Code § 75–02–04.1–10. The scheduled amounts are presumptively correct, and a district court may only deviate from this amount if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interests of the supported child. *State of Michigan, ex rel. Schneider v. Schneider,* 2008 ND 35, ¶ 4, 745 N.W.2d 368 (citing N.D. Admin. Code § 75–02–04.1–09(2)). "This Court has emphasized any deviation from the guidelines requires the court to make a written finding or a specific finding on the record." *Schneider,* at ¶ 4 (citing *Schumacher v. Schumacher,* 1999 ND 10, ¶ 10, 589 N.W.2d 185).

4

The child support guidelines define "net income" as an obligor's gross annual income less federal and state tax obligations and other expenses. N.D. Admin. Code § 75–02–04.1–01(7). In calculating child support, a district court must consider "[n]et income received by an obligor from all sources...." N.D. Admin. Code § 75–02–04.1–02(3). Where an obligor's income is subject to fluctuation, "information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." N.D. Admin. Code § 75–02–04.1–02(7). If an obligor's income has changed in the recent past, or is likely to change in the near future, "consideration may be given to the new or likely future circumstances." N.D. Admin. Code § 75–02–04.1–02(8). However, "unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." *Korynta [v. Korynta],* 2006 ND 17, ¶ 17, 708 N.W.2d 895. Therefore, unless the district court makes a specific finding that the income reflected on the prior year's tax return is not a reliable indicator of future income, "[i]t is improper to calculate an obligor's annual employment income based on a mid-year pay stub. . . ." *Berge v. Berge,* 2006 ND 46, ¶ 19, 710 N.W.2d 417.

[¶11] The district court made the following supplemental findings of fact relevant to its child support calculations:

> Olivia's rate of pay has steadily increased over the past several years because of her efforts at self-improvement and education. For example, Olivia's gross income reported on her 2015 tax returns was $26,851. In 2020, Olivia's gross income was $69,643. Olivia's gross income in 2021 was $66,317. But in 2022, Olivia's most recent tax returns were not a reliable indicator of future earnings because Olivia's hourly rate of pay was recently increased, Olivia's rate of pay was anticipated to remain steady for at least a year, and most significantly, Olivia could not work full-time for the foreseeable future. *See Berge v. Berge*, 2006 ND 46, ¶ 18 ("unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income") (quoting *Korynta v. Korynta*, 2006 ND 17, ¶ 17[, 708 N.W.2d 895]).

In August 2022, when Plaintiff moved to amend child support, Olivia's hourly pay was $36.16. Effective September 29, 2022, Olivia's hourly pay was $37.97. Olivia did not anticipate another increase in pay until January 2024 (about 14 months hence from her testimony). The court used Olivia's top rate of pay in determining her gross annual income as the best indicator of future earnings.

At times relevant to the calculation, Olivia simply could not work 40 hours a week, every week. Olivia was taking classes in pursuit of a Bachelor of Science in Nursing. This was necessary for her career development and will lead to better pay, benefits, and opportunities. In turn, Olivia's efforts at career development benefit the child. To accommodate her classes and studies, Olivia needed to take time off work. She estimated taking off about one week per month. One 40-hour work week a month equals 480 hours over the course of a year, which in turn is about nine hours, or one day, a week on average. Utilization of a 32-hour work week was conservatively proposed by Olivia and adopted by the court. *Compare* [Plaintiff's] proposed child support calculations applying highest rate of pay, 40 hours a week (with and without health insurance). The court used Olivia's estimated ability to work 32 hours a week in determining her gross annual income as the best indicator of future earnings.

Under [N.D. Admin. Code] § 75-02-04.1-02(8), child support calculations "are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income." But, "[i]f circumstances that materially affect the child support obligation have changed in the recent past or are very likely to change in the near future, consideration may be given to the new or likely future circumstances." *Id*. The best representation of Olivia's actual income and child support obligation is that as presented by Defendant, and this was adopted by the court. Olivia earns $37.97 an hour and works an average of 32 hours a week. This finding is supported by Olivia's testimony (especially regarding time off needed for school/studies) and her paystubs from September 2022 (showing her pay rate per hour). As of the date of issuance of the Second Amended Judgment, Olivia's total gross annual income was $63,182. After deductions, Olivia's net annual income was $50,949, and her net monthly income was $4,246.

Olivia's presumptively correct child support obligation for one child is $780. At the time of the issuance of the Second Amended Judgment in 2023, the child was on Medicaid, thus no health insurance deduction was applied.

Here, even Plaintiff urged the court to calculate Defendant/Olivia's gross annual income based on her new, highest rate of pay. Plaintiff did not suggest the court rely on her past tax returns. Her new rate of pay was effective in September 2022, i.e., a recent past change. Further, she needed to cut back her work hours to accommodate her studies, i.e., new future circumstances. The new rate of pay and the reduced work hours are the best indicators of Olivia's actual income.

One could, but no one did, assert the changed circumstances were not material. Had the court simply relied upon Olivia's 2021 tax returns, where she worked for less pay but full-time, it would have made little difference. Olivia's gross income in 2021 was $66,317, compared to the imputed gross annual income of $63,182 starting in 2022, represents a change of only $3,135 in annual income.

(Internal citations to the record omitted.)

[¶12] We conclude the district court's supplemental findings are sufficient to enable us to understand the court's decision. There is evidence to support the court's findings, the court did not misapply the law, and we are not left with a definite and firm conviction the court made a mistake. We therefore conclude the findings determining Olivia Foss's child support amount are not clearly erroneous.

IV

[¶13] Jason Anderson asserts the district court erred by requiring him to pay $2,086.90 for half of the health insurance premiums. He argues the court erred by imposing these costs because Olivia Foss failed to comply with the requirement in the amended judgment that she consult with him to "mutually select and agree upon satisfactory coverage," and by failing to timely submit to him requests for reimbursement.

7

[¶14] Our direction to the district court on remand was stated as follows:

> The amended judgment requires the parties to split out-of-pocket medical expenses, including premiums. The district court found that "Olivia established that up to the date of the last hearing on this issue, she is entitled to reimbursement from Jason in the amount of $2,086.90" without providing an explanation as to how it arrived at that amount. On this record, we are unable to discern how the court arrived at that amount. We conclude the district court did not provide sufficient findings to allow proper appellate review of how it determined the amount of reimbursement, and we remand for the court to make adequate findings explaining its decision.

*Anderson I*, 2024 ND 154, ¶ 13.

[¶15] Reimbursements for health insurance and out-of-pocket medical expenses are addressed in two separate paragraphs of the amended judgment and the second amended judgment. Paragraph 6 of the second amended judgment addresses the child's health insurance and provides as follows:

> Health Insurance. L.C.A. is currently covered by a third party for medical insurance. Once L.C.A. is no longer covered by the third party, pursuant to N.D.C.C. § 14-09-08.10, either Olivia or Jason shall provide coverage when it is available at reasonable cost or becomes available at reasonable cost. If neither party has insurance available at reasonable cost, the parties shall mutually select and agree upon satisfactory coverage and equally split the cost of premiums. Further, Jason is ordered to pay Olivia $2,086.90 within 60 days of the date of the coinciding order as reimbursement for health insurance premiums through the date of the last hearing.

[¶16] Paragraph 7 of the second amended judgment addresses reimbursement for out of pocket medical expenses and reads as follows:

> Out-of-Pocket Medical Expenses: To the extent not covered by insurance, all medical, dental, and vision expenses for the benefit for the minor child, including, but not limited to premiums, deductibles, co-pays, orthodontia, optical, prescription drugs, counseling, psychological and psychiatric treatment, will be split equally by the parties. The party incurring the expense shall submit

billing statements to the other party for reimbursement within sixty (60) days of receiving said bill and that party then has thirty (30) days to pay their portion of the bill. If the party seeking reimbursement fails to make the request within sixty (60) days, reimbursement is deemed waived. If one party has made payment for the child's medical and dental expenses and the other party is reimbursed by the insurance company, the party receiving the reimbursement shall immediately pay the reimbursed amount to the party who paid the health care provider.

[¶17] Interpretation of a judgment is a question of law. *Kienzle v. Selensky*, 2007 ND 167, ¶ 9, 740 N.W.2d 393. Appellate courts interpret judgments using the same rules of construction as for statutes. *Slorby v. Slorby*, 2009 ND 11, ¶ 5, 760 N.W.2d 89. "In a statute, the word 'shall' ordinarily creates a mandatory duty; however, the word 'may' does not create such a duty. The word 'may' is usually used 'to imply permissive, optional or discretional, and not mandatory action or conduct.'" *State v. Glaser*, 2015 ND 31, ¶ 18, 858 N.W.2d 920 (cleaned up).

[¶18] Jason Anderson asserts the district court erred in ordering him to pay half of the child's health insurance premiums because the parties did not mutually select the insurance in violation of paragraph 6 or Olivia Foss did not timely seek their reimbursement in violation of paragraph 7. We disagree.

[¶19] Paragraph 6 has a linear approach to providing insurance for the parties' child. Initially the insurance was provided at no cost by a third party. When the third-party insurance was no longer available, both parties were required to obtain insurance if it is available at no cost or a reasonable cost. Under this requirement, Olivia Foss is providing insurance through her employer. As a last resort, if there is not third-party insurance and neither party has insurance available at no or reasonable cost, the parties are required to select a mutually agreeable policy. Jason Anderson incorrectly argues mutual agreement is required. It is not currently required because Oliva Foss, through her employer, is providing insurance at a reasonable cost. Jason Anderson has not challenged that the current insurance is not being provided at a reasonable cost.

[¶20] Paragraph 6 of the second amended judgment addresses health insurance costs when the insurance is being provided to a party at no or reasonable cost as

is currently occurring through Oliva Foss's employer. The recovery of out-of-pocket costs, including premiums, is covered by paragraph 7 of the second amended judgment. Jason Anderson argues Olivia Foss's failure to seek reimbursement of health insurance premiums within 60 days bars her recovery of fifty percent of the health insurance premiums she paid.

[¶21]  The district court found that "Olivia established that up to the date of the last hearing on this issue, she is entitled to reimbursement from Jason in the amount of $2,086.90" without explaining how it arrived at that amount. Because we were unable to discern how the court arrived at that amount, we remanded for the court to make adequate findings explaining how it arrived at that amount. *Anderson I*, 2024 ND 154, ¶ 13.

[¶22] The district court made the following supplemental findings of fact relevant to its reimbursement calculations:

> Olivia has provided benefit summaries outlining insurance costs. Jason demanded an invoice or receipt for a cost that was deducted from Olivia's paychecks. Jason's demands for documentation that did not exist were unreasonable. . . .

> Prior to June 2020, L.A. was covered by Olivia's mother's policy until Olivia turned 26 years of age. Later, L.A. was covered by Medicaid while Olivia participated in the Jeremiah Project until she became employed with benefits available for her to purchase for L.A. Through her Declarations, live testimony, and exhibits, Olivia has established she incurred costs for health insurance premiums for L.A. from June 2020 through December 2022 totaling $4,173.81. Olivia also showed she did timely ask for reimbursement, but eventually gave up because it was futile. While working at Ethos, from June 2020, to October 2021, Olivia paid $111.39 per month for 17 months for L.A.'s health insurance which totals $1,893.63. Olivia had a job change from Ethos to Edgewood. There was a lapse in health insurance from December 2021 up to March 2022. From March 2022 through July 2022, Olivia paid $182.05 twice a month for five months for L.A.'s health insurance which totals $1,820.50. Olivia had another job change and a lapse of health insurance coverage for L.A. in August 2022. From September 2022 through December 2022, Olivia paid $114.92 per month for four months for L.A.'s health

10

insurance which totals $459.68. Starting January 2023, Jason secured Medicaid for L.A. and Olivia stopped paying for private insurance for L.A. through her employer.

Olivia paid health insurance premiums for L.A. from June 2020 through December 2022 totaling $4,173.81 ($1,893.63 + $1,820.50 + 459.68 = $4173.81). Olivia is entitled to reimbursement for half of the health insurance premiums she has paid for L.A. Jason must reimburse Olivia for health insurance premiums for L.A. one-half of $4,173.81, which is $2,086.90.

(Internal citation to the record omitted.)

[¶23] The record is unclear if Olivia Foss made a request for reimbursement of every individual premium deducted from her paycheck. However, the record reflects the premiums were identical each month and subtracted from her paycheck. Jason Anderson was given notice of the expense that was subtracted from Olivia Foss's paycheck, that it was consistent each month and he did not reimburse her for his portion of the premiums. Jason Anderson was repeatedly requested to reimburse Olivia Foss, had notice of the reoccurring expense, and there was sufficient compliance with the second amended judgment even if Olivia Foss did not make the reimbursement request every pay period.

[¶24] We conclude the district court's supplemental findings are sufficient to enable us to understand the court's decision. There is evidence to support the court's findings, the court did not misapply the law, and we are not left with a definite and firm conviction the court made a mistake. We therefore conclude the findings determining Jason Anderson owes Olivia Foss $2,086.90 in health insurance premiums are not clearly erroneous.

V

[¶25] In the second amended judgment, the district court awarded Olivia Foss sole decision-making authority and removed Jason Anderson's ability to make day-to-day decisions of the minor child. In *Anderson I*, we concluded that the court did not err in awarding Olivia Foss sole decision-making authority; however, the court's determination that it would be in the child's best interest

11

for Jason Anderson to lose the ability to make all day-to-day decisions was not specific enough for this Court to understand the district court's rationale. We remanded for an explanation of why all day-to-day decision-making was removed from one parent in a shared parenting plan. *Anderson I*, 2024 ND 154, ¶ 17.

[¶26] We conclude the record and the district court's supplemental findings provide a sound basis for the court's determination that Jason Anderson should not have day-to-day decision-making authority. The record and the court's supplemental findings highlight that Jason Anderson solely thwarted the decision-making process. The court noted that Jason Anderson's inability to make decisions with Olivia Foss regarding the child's non-emergent medical decisions, education, and religion negatively affected the child. The record contains evidence that Jason Anderson would veto recommendations made by the child's teacher and pediatrician; that Jason Anderson was either unable or unwilling to follow "as needed" instructions from the child's physician; Jason Anderson would insist the child have milk and other dairy when the child had a lactose intolerance; and the child would miss school or extracurricular actives during Jason Anderson's parenting time so he could pursue his own interests. The court noted that Jason Anderson could not make simple decisions regarding lunches, activities, outfits, or transportation without fighting or disagreeing with Olivia Foss.

[¶27] On appeal, Jason Anderson does nothing more than ask this Court to reweigh the evidence. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses[.]" *Boldt v. Boldt*, 2021 ND 213, ¶ 8, 966 N.W.2d 897 (cleaned up); *see also Grasser v. Grasser*, 2018 ND 85, ¶ 23, 909 N.W.2d 99 ("In a bench trial, it is for the district court to determine credibility issues and we do not reweigh the evidence or reassess credibility."). Based on our review of the record, we conclude the district court's supplemental findings are sufficient to enable us to understand the court's decision. There is evidence to support the court's findings, the court did not misapply the law, and we are not left with a definite and firm conviction the court made a mistake. We therefore conclude the findings removing Jason Anderson's ability to make day-to-day decisions are not clearly erroneous.

## VI

[¶28] We affirm the second amended judgment.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr