2010 ND 67

**D. Luke DAVIS, Plaintiff and Appellant**

v.

**Pamela Gordon DAVIS, Defendant and Appellee.**

No. 20090145.

Supreme Court of North Dakota.

April 6, 2010.

Jonathan T. Garaas, Fargo, N.D., for plaintiff and appellant.

Jay Dennis Knudson, Grand Forks, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] D. Luke Davis appeals from a judgment dismissing his action against Pamela Gordon Davis to recover an overpayment of child support. Because the Child Support Guidelines mandate that D. Luke Davis be reimbursed for his overpayment of child support under the circumstances, we reverse.

I

[¶ 2] D. Luke Davis and Pamela Gordon Davis divorced in February 1997. Under the terms of the divorce judgment, Pamela Gordon Davis was awarded custody of the couple's two children, and D. Luke Davis was ordered to pay a total of $425 per month in child support for both children. From January 2004 through February 2007, D. Luke Davis made child

support payments totaling $15,727.97 through the Grand Forks Regional Child Support Unit.

[¶3] As the result of a work-related injury, D. Luke Davis applied for and received disability benefits under the federal Social Security Act. Under 42 U.S.C. § 402 of the Social Security Act, a child of an individual found to be disabled is eligible for additional monthly benefits. Pamela Gordon Davis applied for those benefits on behalf of the children, and in December 2006, each child began receiving $330 per month. In March 2007, the Social Security Administration also paid each child $11,791, for a total lump sum payment of $23,582, for back pay from January 2004 through March 2007. On March 30, 2007, Pamela Gordon Davis created two separate $10,000 certificates of deposit for the children as the custodian under the state Uniform Transfers to Minors Act, N.D.C.C. ch. 47–24.1. In April 2007, Pamela Gordon Davis provided written verification to the Grand Forks Regional Child Support Unit of the children's receipt of the social security payments.

[¶4] In February 2008, D. Luke Davis brought this action against Pamela Gordon Davis to recover the child support payments he had made from January 2004 through February 2007, plus interest, alleging those payments constituted an overpayment of his child support obligation after the children's social security benefits were received and credited as child support under N.D. Admin. Code § 75–02–04.1–02(11). During an evidentiary hearing, Pamela Gordon Davis testified $8,000 from the lump sum payment had been used to pay for one child's college tuition. D. Luke Davis testified the child support payments he had made "were not a gift, but under duress made by me." The district court dismissed the action. Relying on caselaw from other jurisdictions, the

court concluded Pamela Gordon Davis was not required to reimburse D. Luke Davis because the child support payments from January 2004 through March 2007 "were for the immediate benefit of the supported children," the "lump sum disability payments for the children were for their benefit," and those funds "are being used for the children's benefit."

[¶5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. D. Luke Davis's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶6] D. Luke Davis argues the district court erred in dismissing his action because he is entitled to the return of the excess child support received by Pamela Gordon Davis after the lump sum social security disability benefits were credited to his child support obligation under N.D. Admin. Code § 75–02–04.1–02(11).

[¶7] This Court first addressed social security dependency benefits paid to children of a disabled obligor and their effect on an obligor's child support obligation in *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989). In *Guthmiller*, the obligor, who had been declared disabled and had been awarded disability payments, sought to obtain credit on his child support obligation for the children's social security benefits that his former spouse received as representative payee for the children. *Id.* at 644. This Court, following the majority rule, held social security dependency payments made directly to the obligor's children or for their benefit "ordinarily" constitute a change of circumstances for which the obligor is entitled to a credit toward the child support obligation. *Id.* at 647; *see also* M. DiSabatino, Annot., *Right to*

*credit on child support payments for social security or other government dependency payments made for benefit of child,* 34 A.L.R.5th 447 (1995). Relying on *Children and Youth Servs. v. Chorgo,* 341 Pa.Super. 512, 491 A.2d 1374, 1377–78 (1985), this Court rejected the contention that the obligor should not receive credit because the benefits are owned by the children, reasoning the benefits were occasioned by the obligor's employment and the obligor's receipt of a credit had no effect on the children, who would receive the same amount of support a court decided they should receive. *Guthmiller,* at 647. This Court did not rule a credit must always be given, an option the court in *Chorgo,* 491 A.2d at 1378, found was not supported by any caselaw, but held "there is a presumption that credit will be applied, which is rebutted only by articulated reasons supporting the conclusion to the contrary in the court's support order." *Guthmiller,* at 648. This Court also held the credit cannot be applied retroactively toward arrearages, *id.* at 649, and we have applied that holding in subsequent decisions. *See Austin v. Towne,* 1997 ND 59, ¶¶ 14–15, 560 N.W.2d 895; *Mehl v. Mehl,* 545 N.W.2d 777, 780–81 (N.D.1996).

[¶ 8] Effective January 1, 1995, N.D. Admin. Code § 75–02–04.1–02(11) of the Child Support Guidelines was adopted to provide:

> A payment of children's benefits made to or on behalf of a child who is not living with the obligor must be credited as a payment toward the obligor's child support obligation in the month (or other period) the payment is intended to cover, but may not be credited as a payment toward the child support obligation for any other month or period.

The drafters of the Child Support Guidelines explained:

75–02–04.1–02(11): Four commentors, familiar with previous drafts of the proposed rules, expressed concern that there is no provision specifically requiring that children's benefits paid directly to the child be credited against the obligor's child support obligation. Another commentor regarded any provision for such crediting as improper. The language about which the commentors were concerned (which was drafted, but not specifically proposed as a rule) provided:

> A payment of children's benefits made to or on behalf of a child who is not living with the obligor must be credited as a payment toward the obligor's child support obligation in the month (or other period) the payment is intended to cover, but may not be credited as a payment toward the child support obligation for any other month (or period).

This language was not included because it does not go to the establishment of child support guidelines. However, while the subsection actually addresses the proper crediting of payments, its inclusion complements and explains the inclusion of "children's benefits" as part of the obligor's gross income. The subsection also reinforces the holding in *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989). Based on these comments, the subsection is included.

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75–02–04.1, Child Support Guidelines, pp. 10–11 (November 14, 1994). The regulation "reinforce[d]" the holding in *Guthmiller* by *requiring* that children's benefits be credited as a payment toward the obligor's child support obligation rather than creating a rebuttable presumption that the credit will be applied.

[¶ 9] We interpreted N.D. Admin. Code § 75–02–04.1–02(11) in *Tibor v. Ben-*

*drick,* 1999 ND 92, 593 N.W.2d 395. In *Tibor,* the obligor was declared disabled and he began receiving disability benefits, and his child began receiving monthly social security dependency benefits. *Id.* at ¶ 3. The child also received a lump sum payment representing social security dependency benefits from September 1995 through January 1998. *Id.* The district court granted the obligor's motion to eliminate his child support obligation because the monthly social security dependency benefits exceeded his monthly child support obligation, and the court determined the lump sum payment should be credited toward the obligor's child support arrearages. *Id.* at ¶ 5. Relying on N.D. Admin. Code § 75–02–04.1–02(11), we rejected in part the obligee's claim that crediting the lump sum payment to the obligor's child support arrearages was an improper retroactive modification:

> [T]he guidelines expressly provide that benefits, including social security disability dependency benefits, must be credited as a payment toward [the obligor's] child support obligation for the particular months or period the payment was intended to cover.

> The record indicates the lump sum payment represented benefits from September 1995 through January 1998, when [the obligor] was disabled and not working. However, through no fault of [the obligor], [the child] did not receive these benefits until February 1998. Following the guidelines, we conclude [the child's] receipt of the lump sum payment of social security disability benefits, which resulted from a lapse of time between the disability determination and the commencement of benefits, was a payment toward [the obligor's] obligation for the period the payment was intended to cover. The payment must therefore be credited to [the obligor's] child support arrearages which accrued

from September 1995 through January 1998.

*Tibor,* at ¶¶ 7–8. We remanded for a determination of the amount of arrearages that accumulated before September 1995, the starting date of the social security dependency benefits, because under the regulation the obligor was not entitled to credit for that amount. *Id.* at ¶ 9.

[¶ 10] We have not addressed whether a child support obligor is entitled to reimbursement for child support received by an obligee after the obligee receives lump sum social security dependency benefits for the children which exceed the child support ordered to be paid by the obligor. Most courts deny reimbursement under these circumstances.

[¶ 11] Courts essentially use three different rationales to deny reimbursement. The majority of courts simply conclude, as a matter of law, that any excess payment will equitably be deemed to be a gratuity to the child so the custodial parent is not obligated to refund to the obligor any overpayment. *See, e.g., Child Support Enforcement Agency v. Doe,* 92 Hawai'i 276, 990 P.2d 1158, 1167–68 (Haw.Ct.App.1999); *Brown v. Brown,* 849 N.E.2d 610, 616 (Ind. 2006); *Newman v. Newman,* 451 N.W.2d 843, 844 (Iowa 1990); *Holmberg v. Holmberg,* 578 N.W.2d 817, 827 (Minn.Ct.App. 1998), *aff'd* 588 N.W.2d 720 (Minn.1999). A second line of cases reasons that, as a matter of law, the obligor parent is not entitled to reimbursement of any excess child support, because the funds belong to the child and not to the noncustodial parent. *See, e.g., Keith v. Purvis,* 982 So.2d 1033, 1038–39 (Miss.Ct.App.2008); *Steel v. Hartwick,* 209 W.Va. 706, 551 S.E.2d 42, 45 (2001).

[¶ 12] The third line of cases is represented by *Filon v. Green,* 2006 WL 2683516 (Ohio Ct.App., Sept. 20, 2006), an

unreported decision relied upon by the district court in this case. In *Filon*, at *1, the court applied an abuse of discretion standard of review and considered the totality of the circumstances in the case. In denying reimbursement, the *Filon* court noted that 42 U.S.C. § 407(a) prohibited the use of the lump sum payment to satisfy the request for reimbursement, and stressed that the obligor never informed the obligee of his pending application for benefits, which would have allowed the obligee to properly allocate resources to prepare to repay the overpaid support. *Id.* at *4. Instead, the obligee, as in this case, used the lump sum payment to invest in a college fund for the child and invested the remainder for the child's benefit. *Id.* The court rejected the argument that its ruling would "serve as an incentive to accrue arrears in the hope that a future payment may alleviate the obligor from paying his obligation," because "equity does not favor a party who has willfully accrued arrears." *Id.* at *5.

■ [¶ 13] We do not find any of these cases persuasive, because those courts were not interpreting administrative regulations similar to N.D. Admin. Code § 75–02–04.1–02(11). Administrative rules are derivatives of statutes and are construed using well-established principles of statutory construction. *Simon v. Simon*, 2006 ND 29, ¶ 11, 709 N.W.2d 4. Our primary objective in interpreting a statute is to determine the intention of the legislation by first looking at the language of the statute. *Id.* at ¶ 12. We give words in a statute their plain, ordinary, and commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise. N.D.C.C. § 1–02–02.

[¶ 14] Section 75–02–04.1–02(11), N.D. Admin. Code, provides that children's benefits "must be credited as a payment toward the obligor's child support obli-

gation." This language leaves no room for application of equitable principles relied upon by the courts in the first and third lines of cases from other jurisdictions, and the premise underlying the rationale used by the courts in the second group of cases was specifically rejected by this Court in *Guthmiller*, 448 N.W.2d at 647. The term "credit" has been defined as "the provision of money, goods, or services with the expectation of future payment." *Merriam–Webster's Collegiate Dictionary* 294 (11th ed. 2003). The United States Supreme Court has also said the "ordinary meaning" of "credit" is "the obligation due on accounting between parties to transactions." *Propper v. Clark*, 337 U.S. 472, 480, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *see also Kansas City Life Ins. Co. v. Hammett*, 177 La. 930, 149 So. 525, 527 (1933) (" 'Credits are, in effect, the mere legal right with which one is clothed to demand the delivery of money or other property in the future.' ") (internal citation omitted); *Mountain State Motor Car Co. v. Solof*, 97 W.Va. 196, 124 S.E. 824, 825 (1924) ("Credit is the correlative of debt or indebtedness, and that which is due to any person as distinguished from that which he owes.").

[¶ 15] We conclude the plain language of N.D. Admin. Code § 75–02–04.1–02(11) requires that D. Luke Davis be reimbursed for the $15,727.97 he had paid in child support from January 2004 through February 2007, but which was subsequently supplanted by the children's receipt of the lump sum social security dependency benefits. *See also* N.D. Op. Atty. Gen. 2004–L–24, at 3 ("Consistent with the discussion of child support overpayments in N.D.A.G. 96–F–24, the 'surplus' created by the actual collections should first be applied to any existing arrearage, but any remaining balance should not be considered a pre-payment of future child support

without a court order providing that the collections should be applied to future support *rather than be refunded by the custodial parent or assignee.*" (emphasis added)).

[¶ 16] In denying reimbursement, the district court also relied upon *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), in which the United States Supreme Court held that 42 U.S.C. § 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Cf. Kluck v. Kluck*, 1997 ND 41, ¶ 31, 561 N.W.2d 263 ("*identifiable* social security moneys in the hands of a divorcing spouse cannot be counted as marital assets to calculate divisions") (emphasis added). We agree with D. Luke Davis that the court's concern about his ability to recover on the judgment was misplaced. Any difficulty D. Luke Davis may have in enforcing the judgment provides no basis for denying him a judgment mandated under the law. *See Law v. Maercklein*, 292 N.W.2d 86, 91 (N.D.1980) (recognizing some judgments are uncollectible).

[¶ 17] A district court errs as a matter of law if it fails to comply with the Child Support Guidelines. *See Verhey v. McKenzie*, 2009 ND 35, ¶ 5, 763 N.W.2d 113. We conclude the district court erred as a matter of law in ruling D. Luke Davis was not entitled to $15,727.97 plus interest for his overpayment of child support.

### III

[¶ 18] We reverse the judgment.

[¶ 19] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, DANIEL J. CROTHERS, JJ., concur.

MARING, Justice, dissenting.

[¶ 20] I respectfully dissent. I would affirm the trial court's judgment dismissing D. Luke Davis's action for wrongful conversion against Pamela Gordon Davis.

[¶ 21] D. Luke Davis brought an action against Pamela Gordon Davis alleging wrongful conversion of personal property in the amount of $16,325, which represented the amount of overpayment of child support when Social Security children's insurance benefits were paid in a lump sum to Pamela Gordon Davis as representative payee for the parties' children. D. Luke Davis alleged that Pamela Gordon Davis's receipt of these monies created an overpayment of child support, that he was entitled to their immediate return, and that Pamela Gordon Davis had wrongfully deprived him of these monies despite his demand for return of the monies in her possession. He prayed for a judgment to be entered against Pamela Gordon Davis in "the amount of $16,325 or such greater amount as is determined to be appropriate once all monies received by Defendant from the Social Security Administration are identified." D. Luke Davis brought this action against Pamela Gordon Davis individually and not as a representative or custodian of the children.

[¶ 22] "Conversion is the wrongful exercise of dominion over the personal property of another in a manner inconsistent with, or in defiance of, the owner's rights." *Kummer v. City of Fargo*, 516 N.W.2d 294, 298 (N.D.1994). Our Court has held that "an act which might otherwise constitute a conversion is privileged when authorized by a court order which is valid on its face." *Id.* at 298–99. "It is well settled that child support belongs to the child, and the custodial parent has only a representational right to collect support on behalf of the child." *Sweeney v. Sweeney*, 2002 ND 206, ¶ 22, 654 N.W.2d 407 (citing *Toni v. Toni*, 2001 ND 193, ¶ 11, 636 N.W.2d 396; *Sullivan v. Quist*, 506 N.W.2d 394, 397 (N.D. 1993); *Spilovoy v. Spilovoy*, 488 N.W.2d

873, 877 (N.D.1992); *Sprynczynatyk v. Celley*, 486 N.W.2d 230, 232 (N.D.1992)). "Child support under the guidelines is modeled upon the assumption that the presumptive amount will be paid to the custodial parent, as obligee, to use for the child's current expenses." *Schleicher v. Schleicher*, 551 N.W.2d 766, 768 (N.D. 1996). We have noted that "children cannot wait for support." *Id.*

[¶ 23] In the present case, Pamela Gordon Davis received child support for the parties' children from D. Luke Davis under a court order. Under N.D.C.C. § 14–08.1–05, "a due and unpaid child support payment becomes a judgment as a matter of law." *Marchus v. Marchus*, 2006 ND 81, ¶ 7, 712 N.W.2d 636. A trial court has continuing jurisdiction to modify child support. *Id.* at ¶ 8. The appropriate procedure to modify child support is to bring a motion to modify child support and to amend the judgment. *See, e.g., Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D. 1995) (citing *Gerhardt v. Robinson*, 449 N.W.2d 802, 804 (N.D.1989)). We have held: "Generally, a modification of child support should be made effective from the date of the motion to modify, absent good reason to set some other date, and the 'court retains discretion to set some later effective date, but its reasons for doing so should be apparent or explained.'" *Marchus*, 2006 ND 81, ¶ 8, 712 N.W.2d 636 (quoting *Geinert v. Geinert*, 2002 ND 135, ¶ 10, 649 N.W.2d 237) (emphasis omitted). D. Luke Davis brought an action against Pamela Gordon Davis for wrongful conversion of his personal property instead of bringing a motion to amend child support. Pamela Gordon Davis's act of taking possession of child support is privileged under a court ordered judgment and cannot serve as the basis for a conversion claim. The children had a legal right to the child support, and Pamela Gordon Davis had a legal right to receipt of the child support for the children as their custodial parent.

[¶ 24] Her possession of the Social Security children's insurance benefits is authorized by federal law. D. Luke Davis has no legal interest in the children's insurance benefits. Under the Social Security Act, 42 U.S.C. § 402, every dependent child of an individual who is entitled to Social Security benefits shall be entitled to a child's insurance benefit. I agree with the court in *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883, 886 (1980), that "the benefit inures directly to the child, notwithstanding the prerequisite status of the parent. No indices of the father's ownership ever attached to these funds." *See also Keith v. Purvis*, 982 So.2d 1033, 1038 (Miss.Ct. App.2008). Upon meeting the requirements of the law, the children have a legal right to the benefits. Under 20 C.F.R. § 404.2001(b)(1) (2010), the Social Security Administration will select a representative payee if the beneficiaries, due to their youth, may be unable to manage their own benefits. Generally, if a beneficiary is under age 18, they will pay benefits to a representative payee, the person who has custody of the beneficiary. 20 C.F.R. 404.2010(b); 20 C.F.R. 404.2021(c). "A payee may not be required to use benefit payments to satisfy a debt of the beneficiary, if the debt arose prior to the first month for which payments are certified to a payee." 20 C.F.R. § 404.2040(d) (2010). In addition, 42 U.S.C. § 407(a), states:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

"The Supreme Court of the United States has stated that this statute bars the use of any legal process to reach social security benefits." *Steel v. Hartwick,* 209 W.Va. 706, 551 S.E.2d 42, 45 (2001) (citing *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973)). It further must be noted, the representative payee must account to the Social Security Administration for the use of the benefits by written reports at least once a year. 20 C.F.R. § 404.2065 (2006). The children's insurance benefits clearly are the property of the children for use for their care and needs. D. Luke Davis never had an ownership interest in the benefits and neither did Pamela Gordon Davis. D. Luke Davis has no viable action for wrongful conversion against Pamela Gordon Davis. Pamela Gordon Davis does not have possession of any personal property in which D. Luke Davis has an ownership interest. In light of these provisions and the caselaw, any requirement for some sort of reimbursement from Pamela Gordon Davis, would have to be out of monies other than the payments for benefits actually made by the Social Security Administration. Apparently, according to the record, D. Luke Davis abandoned his claim for wrongful conversion on January 13, 2009, at the time set for the trial of the matter. When the court asked what his claim for $15,727.97 was based on, D. Luke Davis through his attorney, stated:

That is the amount of money that he paid for child support during the period of January 1 of 2004 through February of 2007.... And under the laws of the State of North Dakota and the administrative code and the child support, there must be a credit given to him for the Social Security dependency benefits that are coming about as a result of Mr. Davis'[s] disability.

D. Luke Davis's attorney also clarified:

And we have never asked for the Social Security monies themselves. We merely identify that Social Security monies are a logical source for the repayment of those monies, but it has to be done by Pamela Davis from her available monies, because she's gotten paid twice for the same time period.

Pamela Gordon Davis's attorney responded that "the plaintiff's claim is based on wrongful conversion.... I think that the Complaint should be dismissed...." Pamela Gordon Davis's attorney argued the money was all paid for the benefit of the children, and Pamela Gordon Davis should not be required to pay any of the Social Security money back to D. Luke Davis. The trial court never ruled on Pamela Gordon Davis's motion to dismiss the Complaint and proceeded to take testimony from both parties. It appears on the record that the matter was tried on the interpretation of N.D. Admin. Code § 75–02–04.1–02(11) without any motion to amend the Complaint or to amend the pleadings to conform to the evidence. *See* N.D.R.Civ.P. 15.

[¶ 25] Some obligors who have claimed that they are entitled to be reimbursed by the custodial parent of the children have brought actions claiming their former wife was unjustly enriched. Courts have dismissed those actions stating the plaintiff obligor "[i]s not entitled to restitution for benefits which the defendant had a legal right to receive." *Steel,* 551 S.E.2d at 45; *see, e.g., Newman v. Newman,* 451 N.W.2d 843, 845 (Iowa 1990) ("We hold that a disabled parent who does not seek modification of a support obligation may not later claim unjust enrichment by the custodial parent who receives social security as well as child support payments."); *Keith v. Purvis,* 982 So.2d 1033, 1039 (Miss.Ct.App. 2008) ("[A] non-custodial parent is not entitled to reimbursement from a custodial parent for child support payments that

have vested in the minor child and have been paid pursuant to [a] valid court order."); *cf. Miller v. Jacobsen,* 2006 SD 33, 714 N.W.2d 69.

[¶ 26] The majority of actions in other jurisdictions for credit and reimbursement have been brought as motions to modify child support and to amend child support judgments. That is the proper manner to bring to the court a request for a credit against child support due contemporaneously with the receipt of benefits, for a credit for a lump sum payment against arrearages, and for reimbursement for overpayment of child support based on the interpretation of a Child Support Guideline.

[¶ 27] The majority opinion treats the present action by D. Luke Davis as one for reimbursement and relies for its reversal of the trial court's judgment on an interpretation of N.D. Admin. Code § 75–02–04.1–02(11). The majority quotes the drafters of the Child Support Guidelines in support of its interpretation. I disagree that the quotes from the drafters support the majority opinion. In 1994, the drafters of the proposed amendments to the Child Support Guidelines received comments not only to N.D. Admin. Code § 75–02–04.1–02(11), but also to § 75–02–04.1–01(5). The drafters' summary of comments states:

> *75–02–04.1–01(5):* Fourteen commentors addressed comments to the definition of "gross income."
>
> Several commentors expressed a view that the definition of "gross income" of an obligor should not include "children's benefits." No change based upon these comments is recommended. In North Dakota (and in several other states), courts typically permit an obligor credit for the amount of "children's benefits" (as that term is defined in this section) on a child support obligation. A conse-

quence is that the obligor often has his or her entire support obligation met through the benefit.

> The presumption that children's benefits should be credited toward the parent's support obligation not exceeding the monthly support obligation, which can be rebutted only by articulate reasons supporting a conclusion to the contrary, was established in *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989). *Although North Dakota is not obliged to credit children's benefits against an obligor's duty of support (see Rose v. Rose,* 481 U.S. 619 [107 S.Ct. 2029, 95 L.Ed.2d 599] (1987)), *these guidelines do not disturb the principle laid down in Guthmiller.* Consistent with following the *Guthmiller* principle, such children's benefits must be included in the obligor's gross income.

> In addition, the amount of the child support obligation is typically set without consideration of the obligor's increased ability to pay child support because of the children's benefits. Inclusion of the amount of children's benefits in the obligor's gross income takes nothing away from the child. Rather, it assures that the financial advantage gained by an obligor whose child receives children's benefits is in fact recognized in setting the child support obligation.

(Emphasis added). When these explanations are read together with the drafters' explanations of the amendments to N.D. Admin. Code § 75–02–04.1–02(11), it is clear that the language added relating to the right of an obligor to receive a credit toward the obligor's child support obligation was included only to address "the proper crediting of payments," to explain "the inclusion of 'children's benefits' as part of the obligor's gross income" and to "reinforce[ ] the holding in *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989)."

[¶ 28] In *Guthmiller*, our Court held that there is a presumption that a credit will be applied against child support for payments made directly to a child from the Social Security Administration for children's insurance benefits, which is rebutted only by articulated reasons supporting the conclusion to the contrary in the court's support order. 448 N.W.2d at 648. By referring to *Guthmiller* in the explanation of the inclusion of subsection (11) and stating the subsection "reinforces the holding in *Guthmiller*," the intent was to provide only a credit for contemporaneously owed child support. I disagree with the statement in the majority opinion that our Court in *Guthmiller* rejected the contention that the obligor should not receive credit because the benefits are owned by the children by relying on *Children & Youth Services v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374, 1377–78 (1985). The Pennsylvania court said "the enquiry should be whether it is fair and just that the support obligor be given credit for these benefits. . . ." *Id.* One consideration is that the benefits are occasioned by the obligor's employment, but the other consideration is that the children receive the same child support due them under the court order. *Id.* The Court, in *Guthmiller*, expressly refused to provide a credit retroactively to arrearages. *Id.* at 649. The Court further held that the credit should be allowed as of the time of commencing the modification proceedings. *Id.* This was the law at the time subsection (11) was adopted and on which the drafters relied.

[¶ 29] In *Tibor v. Bendrick*, 1999 ND 92, ¶ 7, 593 N.W.2d 395, our Court held that a lump sum payment of children's insurance benefits must be credited as a payment toward a child support obligation for the particular months or period the payment was intended to cover based on N.D. Admin. Code § 75–02–04.1–02(11).

We held that the lump sum payment must be credited to child support arrearages which accrued during the period between disability and commencement of the disability benefits. *Id.* at ¶¶ 8–9. We never discussed the drafters' explanations of the proposed subsection (11). Instead, our Court cited for support a number of cases from other jurisdictions that held the Social Security payment should be credited to an obligor's arrearage accumulated after the date the obligor became disabled. *Id.* at ¶ 8.

[¶ 30] When the monthly Social Security payment is greater than the child support ordered by the court, the majority of courts treat the excess payment as a gratuity to the child so that the custodial parent is not obligated to repay the obligor parent the excess. *Child Support Enforcement Agency v. Doe*, 92 Hawai'i 276, 990 P.2d 1158, 1167–68 (Haw.Ct.App.1999). Also, the majority of courts hold that the disabled obligor parent is normally entitled to credit for Social Security disability payments that are contemporaneous with that parent's support obligation. *Id.* at 1163. Further, a majority of courts hold that the obligor is entitled to a credit against arrearages that accumulated for the period between disability and the date benefit payments begin when a lump sum is awarded for that period. *See* Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447 (1995).

[¶ 31] However, as the majority opinion admits, a majority of courts hold that an obligor is not entitled to reimbursement for payments of child support made during the period between a finding of disability and the commencement of benefits to the children and have done so on well-reasoned grounds. In *Newman v. Newman*, the court in denying the obligor the right

to restitution for payments of child support back to his date of disability, held:

> Under the present record, however, *[the obligor] has made no showing that his disability deprived him of the financial resources to meet his obligation.* ... [H]e did not pursue whatever right he may have had to a modification of his obligation. To allow him to retroactively do so now would be patently unfair to the custodial parent who has long since parted with the funds to support her charges.
>
> *As between the parties, the burden of seeking modification of a support order rightfully lies with the parent who seeks to offset a support obligation against social security benefits.* ...
>
> . . . .
>
> *We hold that a disabled parent who does not seek modification of a child support obligation may not later claim "unjust enrichment" by the custodial parent who receives social security as well as child support payments.*

451 N.W.2d 843, 845 (Iowa 1990) (citations omitted) (emphasis added). The Supreme Court of Iowa further stated:

> The rule in Iowa is that a child support award may be offset by social security benefits during the period in which the benefits are received; any broader application would amount to 'an irregular variance of the terms of the decree.' ... *The rule is premised on the importance of meeting the current needs of children, thereby protecting their right to regular and uninterrupted support.*

*Id.* at 844 (emphasis added). In *Brown v. Brown,* the Supreme Court of Indiana held a disabled parent is entitled to credit against the parent's child support' obligations for Social Security disability benefits paid to a child effective as of the date the parent files a petition to modify a support order. 849 N.E.2d 610 (Ind.

2006). In *Brown,* the father also claimed he was entitled to reimbursement for support overpayment because he paid $7,545 in back support toward his arrearage. *Id.* at 612. The court held that Social Security disability benefits to children cannot be credited against child support arrearages that are accumulated before the noncustodial parent has filed a petition to modify based on disability. *Id.* at 615. The court laid out some general principles on the handling of lump-sum payments of retroactive Social Security disability benefits paid to children of disabled parents. *Id.* " 'The rule is premised on the importance of meeting the current needs of children, thereby protecting their right to regular and uninterrupted support.' " *Id.* (quoting *Newman,* 451 N.W.2d at 844) (emphasis added). The court adopted the procedure requiring the disabled party to " 'petition the trial court for modification of a support order based on the apparent inability to work caused by the disability and alert the court to the pending application for benefits' " and " 'at the same time providing the custodial parent with notice that such a modification is a possibility.' " *Id.* (quoting *Jenerou v. Jenerou,* 200 Mich.App. 265, 503 N.W.2d 744, 746 (1993)). The court concluded "[w]here a parent voluntarily overpays his or her child support in an attempt to receive a prospective credit, the excess amount is properly treated as a gratuity to the children and no credit is granted." *Id.* "Where all or a portion of lump-sum payments of retroactive Social Security disability benefits paid to children cannot be credited against existing child support arrearages ... we believe the doctrine of non-conforming payments dictates the excess amount is properly treated as a gratuity to the children and no credit is granted." *Id.* at 616 (emphasis added). Consistent with this reasoning, a North

Dakota Attorney General opinion, addressing whether a child support payment in excess of the amount owed should be treated by a clerk of court as future payment of support or credited toward arrears, concluded that the overpayment could not be treated as a prepayment of future monthly child support obligations, but must be applied to reduce any arrears. N.D. Op. Atty. Gen. 96–F–24, Dec. 31, 1996. It further concluded if there were not arrears, one option would be to treat it as a voluntary payment for the immediate benefit of the supported child. *Id.*

[¶ 32] I conclude that a "credit" in this context is a deduction applied to something that is owed, not to something already paid. *See Merriam–Webster's Collegiate Dictionary* 294 (11th ed. 2003) (defining "credit" as "(f) a deduction from an amount otherwise due"). At the time subsection (11) was adopted, it was explained by its drafters as "reinforc[ing]" *Guthmiller's* holding that an obligor could receive a credit for benefits paid contemporaneously with due and owing child support payments. Although our Court interpreted N.D. Admin. Code § 75–02–04.1–02(11) and allowed the application of a lump sum benefit award to arrearages that were accumulated during the period of disability, we never addressed the application of a lump sum benefit award to paid child support. In light of the drafters' explanations, I am of the opinion that subsection (11) was a codification of this Court's holding in *Guthmiller* and there was no intent to provide reimbursement of child support lawfully paid to and received by the custodial parent. The majority opinion awards a money judgment against a custodial parent, individually, which can be executed on against that person's real and personal property. Pamela Gordon Davis lawfully came into possession of the child support by court order. Pamela Gordon Davis lawfully came into possession of Social Security children's insurance benefits as the designated representative payee of the children. Pamela Gordon Davis does not have possession of any money in which D. Luke Davis has any ownership interest. The child support and benefits all belong to the children to be used for their needs and care. D. Luke Davis has neither proven wrongful conversion of his personal property nor unjust enrichment. I do not interpret N.D. Admin. Code § 75–02–04.1–02(11) to require that he be reimbursed from Pamela Gordon Davis personally for what he alleges is an overpayment of child support because of the children's receipt of Social Security benefits. D. Luke Davis had the resources during his disability to pay his child support. Our child support guidelines require consideration of income from all sources in setting child support, not just wages. N.D. Admin. Code § 75–02–04.1–02(3). Further, he has received a lump sum of $36,000 as disability benefits, which are to be considered in his gross income. *See* N.D. Admin. Code § 75–02–04.1–01–(5)(b). He should have brought this as an action to modify his child support payment. A trial court has continuing jurisdiction to modify child support. *Wagner v. Wagner,* 2007 ND 101, ¶ 28, 733 N.W.2d 593.

[¶ 33] The majority of this Court has allowed D. Luke Davis to accomplish what he could not do in a child support proceeding. The Court retroactively modified D. Luke Davis's child support payments from 2004 to 2007 by refunding money that was owed and paid for the benefit of his children without a motion to modify. This directly contradicts the purpose of child support and our case law. A custodial parent cannot be expected to appropriately provide for the current needs of his or her children if the parent has to worry that the noncustodial parent may someday collect

Social Security disability benefits that entitle the noncustodial parent to reimbursement for support previously paid. With what money is Pamela Gordon Davis expected to pay this judgment?

[¶ 34] I would affirm the trial court's judgment.

[¶ 35] MARY MUEHLEN MARING