2010 ND 94

**Priscilla SONNENBERG, n/k/a Priscilla Sauer, Plaintiff and Appellant**

v.

**Terry SONNENBERG, Defendant and Appellee.**

No. 20090353.

Supreme Court of North Dakota.

May 17, 2010.

Daniel H. Oster (argued), Bismarck, ND, for plaintiff and appellant.

Suzanne M. Schweigert (argued), Bismarck, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Priscilla Sonnenberg, n/k/a Priscilla Sauer, appeals from an amended order and judgment. We hold the district court erred as a matter of law by failing to comply with the child support guidelines and reverse and remand the court's calculation of the parties' child support obligations. We affirm the district court's denial of attorney fees.

I.

[¶ 2] Sauer and Terry Sonnenberg married in 1993 and have two children together, J.S. and K.S. The parties di-

vorced in 2002. In accordance with the parties' stipulation, the district court entered a divorce judgment awarding Sauer primary residential responsibility for both children, granting Sonnenberg reasonable parenting time, and ordering Sonnenberg to pay $751 per month in child support. On September 30, 2008, J.S. told Sauer she wanted to move in with Sonnenberg. Sauer contacted Sonnenberg to ask whether J.S. could move into his residence, Sonnenberg agreed, and J.S. moved in on October 1, 2008. After J.S. moved into his home, Sonnenberg continued to pay $751 per month in child support, as provided by the divorce judgment.

[¶ 3] On March 19, 2009, Sonnenberg filed a motion to modify the divorce judgment under N.D.R.Ct. 3.2. Sonnenberg requested the district court award him primary residential responsibility for J.S. and modify the parties' child support obligations. Sonnenberg did not file a motion for relief from the divorce judgment under N.D.R.Civ.P. 60(b)(vi). Sauer filed a counter-motion, agreeing to the district court awarding Sonnenberg primary residential responsibility for J.S. and modifying the parties' child support obligations, but requesting the court award her attorney fees. In August 2009, the parties entered a stipulation regarding primary residential responsibility and parenting time for both of their children.

[¶ 4] The district court held a hearing in September 2009 primarily regarding the proper amount of the parties' child support obligations, as well as the date from which the modified obligations should apply. Sauer, Sonnenberg, and J.S. all testified at the hearing. When J.S. moved into Sonnenberg's home, Sauer stated she "asked [Sonnenberg] for a cooling off period so that J.S. could decide for sure if this is exactly what she wanted." Sauer testified she wanted to wait until after the cooling off period before modifying child support, and she did not agree to modification beginning October 1, 2008. Sauer stated she presently resides with her new husband, Jason Sauer, and three children, including the parties' daughter, K.S. She stated Jason Sauer is the father of one of the children living in their home, and she receives child support from the father of the third child. Sauer testified she has worked in home daycare since 1997, never earning more than federal minimum wage.

[¶ 5] Sonnenberg testified that, when J.S. moved into his home on October 1, 2008, he and Sauer agreed to modify his child support obligation beginning that day. On cross-examination, Sonnenberg acknowledged Sauer requested a "cooling off period," but Sonnenberg insisted he and Sauer agreed to modification beginning October 1st:

Q: Isn't it true that in September of last year you wanted the child support obligation to change on October 1st, correct?

A: Correct.

Q: And [Sauer] specifically stated you're going to wait six months to see if [J.S. moving into your home] worked out?

A: [Sauer] asked me for a cooling off period, which I denied. I said I did not want a cooling off period.

Q: Okay. So she didn't agree and you didn't agree?

A: To the cooling off period, correct.

Q: Okay. So she didn't agree to the six-month time period for or when the date child support would become effective either then?

A: She agreed that the child support would go till October 1st. The cooling off period was simply it was supposed to be six months in case J.S. changed her mind and wanted to come back and live

with [Sauer], then all of this would be a moot point. The fact is J.S. did come live with me and has lived with me ever since. Therefore, the original conversation of going back to October 1st still stands.

[¶ 6] Sonnenberg also testified about recent changes in his employment and income. Sonnenberg stated he began working at King Coal Furnace Corporation (King Coal) on July 1, 2009, earning $37,000 per year. Sonnenberg stated he previously worked at Mitzel Builders for seven-plus years. Sonnenberg said he voluntarily left Mitzel Builders, even though he would earn less at King Coal, because Mitzel had become an increasingly negative work environment, and the company was having financial difficulties. Sonnenberg stated he also earns "about $3,800" annually from Nodak Sportsman's Club. During 2009, Sonnenberg stated he earned $1,000 from J & E Construction, though he did not anticipate earning additional income from the company, and $14,000 on the sale of a vehicle. Sonnenberg testified he also earns income from contract for deed payments. Sonnenberg stated he currently resides with J.S. and his girlfriend, who contributes approximately $600 per month towards their household expenses.

[¶ 7] J.S.'s testimony corroborated both parties. J.S. stated she was present when the parties discussed modifying Sonnenberg's child support obligation, and she recalled Sauer agreeing "that October 1st [2008] would be the start of child support because that's when I moved [into Sonnenberg's home]." J.S. also testified Sauer mentioned a "six-month trial period" during this conversation.

[¶ 8] At the district court's request, the parties submitted post-hearing letters outlining their child support proposals. Sonnenberg and Sauer agreed the district court should offset their child support obligations under N.D. Admin. Code § 75–02–04.1–03, because both would have primary residential responsibility for one of their children. The parties also agreed the district court should impute income to Sauer under N.D. Admin. Code § 75–02–04.1–07(3)(a), because she earns less than the federal minimum wage. In her letter, Sauer argued the district court should also impute income to Sonnenberg based upon his earning capacity under N.D. Admin. Code § 75–02–04.1–7(10), because he voluntarily quit his job at Mitzel Builders and accepted lower-paying employment at King Coal. Sauer claimed Sonnenberg's income should include money his girlfriend contributes to their household expenses. Finally, Sauer argued the district court should order the modified child support obligations effective March 17, 2009, the date Sonnenberg filed the motion to modify the divorce judgment. In his letter, Sonnenberg argued the district court should find the parties agreed to modify their child support obligations beginning October 1, 2008, and the district court should therefore order modification retroactive to that date. Because he had continued to pay child support to Sauer under the original divorce judgment, Sonnenberg also requested the district court order Sauer repay him for excess amounts she received since that date. In calculating his prospective child support obligation, Sonnenberg claimed the district court should use his income from King Coal and Nodak Sportman's Club because his income at Mitzel Builders was not an accurate reflection of his future earnings.

[¶ 9] The district court issued an amended order and judgment awarding Sonnenberg primary residential responsibility for J.S. With regard to child support, the amended order and judgment largely adopted Sonnenberg's arguments and cal-

culations. The district court found "Sonnenberg made a reasonable decision to change his employment [to King Coal] in order to [e]nsure that he would continue to be employed." Therefore, the district court rejected Sauer's argument that it should impute income to Sonnenberg based upon his earning capacity. The district court also rejected Sauer's argument that Sonnenberg's income should include money his girlfriend contributes towards their household expenses. The district court stated: "There is no evidence to suggest Terry Sonnenberg is receiving income from his girlfriend. The situation is more like a situation in which a roommate pays a fair share of the household expenses."

[¶ 10] After offsetting each party's child support obligation, the district court ordered Sonnenberg to pay $258 per month in child support. The amended judgment stated this amount was "based on [Sonnenberg's] gross annual income of $39,700, and [Sauer's] gross average annual income of $15,080." The district court provided no further explanation for how it calculated the parties' child support obligations or incomes. The district court also ordered the modification retroactive to October 1, 2008. The district court stated it found "the parties agreed to modification of Terry Sonnenberg's child support obligation at the time when [J.S.] began residing with him." Because the district court modified Sonnenberg's obligation retroactive to October 1st, and he had continued to pay $751 per month under the original divorce judgment, the district court ordered Sauer to repay Sonnenberg $5,401 for the excess child support he had paid since that date. Finally, the district court denied Sauer's request for attorney fees, simply stating: "No attorney fees will be awarded." Sauer now appeals, arguing the district court erred in modifying the

parties' child support obligations and denying her request for attorney fees.

## II.

[¶ 11] In *Fleck v. Fleck*, 2010 ND 24, ¶ 13, 778 N.W.2d 572, this Court explained its review of a district court's child support determination:

"'Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.'" *Verhey v. McKenzie*, 2009 ND 35, ¶ 5, 763 N.W.2d 113 (quoting *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215). "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines." *Doepke v. Doepke*, 2009 ND 10, ¶ 6, 760 N.W.2d 131.

On appeal, Sauer argues the district court erred as a matter of law by failing to comply with the child support guidelines and by ordering the modification of the parties' obligations retroactive to October 1, 2008. We agree.

[¶ 12] In the amended judgment, the district court stated: "Due to the equal [primary residential responsibility] arrangement, the parties' child support obligations shall offset each other and [Sonnenberg] shall be responsible for child support in the amount of $258, which is based on [Sonnenberg's] gross annual income of $39,700, and [Sauer's] gross average annual income of $15,080." The district court provided no further explanation for its child support calculations. "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined."

N.D. Admin. Code § 75–02–04.1–02(10). The district court violated N.D. Admin. Code § 75–02–04.1–02(10), because it failed to state how it determined the parties' net income.

[¶ 13] The district court also violated N.D. Admin. Code § 75–02–04.1–06.1 in calculating Sauer's child support obligation because it failed to make an allowance for the children living in her home. "The child support guidelines require additional calculations to be made 'in all cases involving an obligor who ... [o]wes a duty of support to at least one obligee and also owes a duty of support to a child living with the obligor who is not also the child of that obligee.'" *Machart v. Machart*, 2009 ND 208, ¶ 16, 776 N.W.2d 795 (quoting N.D. Admin. Code § 75–02–04.1–06.1(1)(b)). After J.S. moved into Sonnenberg's residence, Sauer continued to reside with three children, two of whom are not children of Sonnenberg's. Because Sauer owes a duty of support to J.S., as well as the children living in her home, the district court should have made an allowance for the other children under N.D. Admin. Code § 75–02–04.1–06.1.

[¶ 14] In addition, the district court erred as a matter of law in determining Sonnenberg's child support obligation. In the amended judgment, the district court stated Sonnenberg's gross annual income was $39,700. The district court apparently took the figure from Sonnenberg's post-hearing letter, in which Sonnenberg claimed his recent change in employment would reduce his annual gross income to $39,700. The district court denied Sauer's request to impute income to Sonnenberg based upon his earning capacity because it found Sonnenberg "made a reasonable decision to change his employment...."

[¶ 15] This Court has previously outlined the manner in which a district court should calculate an obligor's income:

The child support guidelines define "net income" as an obligor's gross annual income less federal and state tax obligations and other expenses. N.D. Admin. Code § 75–02–04.1–01(7). In calculating child support, a district court must consider "[n]et income received by an obligor from all sources...." N.D. Admin. Code § 75–02–04.1–02(3). ... If an obligor's income has changed in the recent past, or is likely to change in the near future, "consideration may be given to the new or likely future circumstances." N.D. Admin. Code § 75–02–04.1–02(8). However, "unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." [*Korynta v. Korynta*], 2006 ND 17, ¶ 17, 708 N.W.2d 895. Therefore, unless the district court makes a specific finding that the income reflected on the prior year's tax return is not a reliable indicator of future income, "[i]t is improper to calculate an obligor's annual employment income based on a mid-year pay stub...." *Berge v. Berge*, 2006 ND 46, ¶ 19, 710 N.W.2d 417.

*Heinle v. Heinle*, 2010 ND 5, ¶ 38, 777 N.W.2d 590. The district court did not make a specific finding that the income reflected on Sonnenberg's prior tax return was not a reliable indicator of future income. The district court's finding that Sonnenberg made a reasonable decision to change employment does not suffice. Because the district court did not make the requisite findings, it erred as a matter of law by failing to use Sonnenberg's prior tax return in calculating his child support

obligation. On remand, the district court must either make adequate findings that Sonnenberg's prior tax return is not a reliable indicator of future income or use the tax return in calculating Sonnenberg's child support obligation. If the district court finds Sonnenberg's prior tax return is not a reliable indicator of future income, the district court must also make adequate findings regarding Sonnenberg's future income and how that income was determined.

[¶ 16] Finally, the district court erred as a matter of law by modifying the parties' child support obligations retroactive to October 1, 2008, the date J.S. moved into Sonnenberg's home. The district court found "the parties agreed to modification of Terry Sonnenberg's child support obligation at the time when [J.S.] began residing with him." Based upon the parties' agreement, the district court ordered retroactive modification. "Generally, a modification of child support should be made effective from the date of the motion to modify, absent good reason to set some other date, and the 'court retains discretion to set some *later effective date,* but its reasons for doing so should be apparent or explained.'" *Marchus v. Marchus,* 2006 ND 81, ¶ 8, 712 N.W.2d 636 (emphasis added) (quoting *Geinert v. Geinert,* 2002 ND 135, ¶ 10, 649 N.W.2d 237). *Accord Davis v. Davis,* 2010 ND 67, ¶ 23, 780 N.W.2d 707; *Wagner v. Wagner,* 2007 ND 101, ¶ 28, 733 N.W.2d 593; *Bertsch v. Bertsch,* 2006 ND 31, ¶ 7, 710 N.W.2d 113.

[¶ 17] This Court has only permitted retroactive modification of a party's child support obligation once. *See Brakke v. Brakke,* 525 N.W.2d 687, 689–90 (N.D. 1994). As this Court explained in *Krizan v. Krizan,* 1998 ND 186, ¶ 11, 585 N.W.2d 576:

> *Brakke* involved an agreement by both parents to change custody of their

daughter for an extended period of time. [*Brakke,* at 688–89]. Following this change, the father requested retroactive relief from his child support payments under a prior judgment. *Id.* at 689. We concluded Rule 60(b)(vi), N.D.R.Civ. P., could be applied to relieve the father from his child support obligations back to the date he became the child's custodial parent. *Id.* at 690. However, in retroactively invalidating Mr. Brakke's support payments, we clearly stated this decision was not a retraction from our position that "vested support rights cannot be retroactively modified." *Id.*

Thus, "when both parents agree to an actual change in [primary residential responsibility] for an extended period of time, Rule 60(b)(vi), N.D.R.Civ.P., can be used to provide relief from the unjust enforcement of the de facto custodial parent's support obligation." *Brakke,* at 690. Sonnenberg moved to modify the divorce judgment under N.D.R.Ct. 3.2; he did not move for relief from the judgment under N.D.R.Civ.P. 60(b)(vi). Therefore, the district court erred as a matter of law by ordering retroactive modification of the parties' child support obligations.

[¶ 18] We reverse the amended judgment because the district court erred as a matter of law by failing to comply with the child support guidelines and ordering the modification retroactive to October 1, 2008. On remand, the district court should recalculate the parties' child support obligations consistent with this opinion.

### III.

[¶ 19] Sauer also argues the district court erred by denying her request for attorney fees. District courts have "considerable discretion" to award attorney fees to either party in a divorce proceeding under N.D.C.C. § 14–05–23. *Gustafson v. Gustafson,* 2008 ND 233, ¶ 14,

758 N.W.2d 895 (quoting *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 43, 673 N.W.2d 601). In awarding attorney fees, the district court must balance one party's needs against the other party's ability to pay and should consider whether either party unreasonably increased time spent on the case. *Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590. The district court's decision whether to award attorney fees will not be set aside on appeal absent an abuse of discretion. *Id.* "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner." *Dronen v. Dronen*, 2009 ND 70, ¶ 51, 764 N.W.2d 675 (quoting *Bachmeier v. Wallwork Truck Centers*, 544 N.W.2d 122, 125 (N.D.1996)).

▉ [¶ 20] In the amended order, the district court stated: "No attorney fees will be awarded." Sauer argues the district court erred by refusing to award her attorney fees because she makes less than federal minimum wage and Sonnenberg is able to pay. Sauer also claims Sonnenberg unreasonably increased the time spent on the case. We hold the district court did not abuse its discretion by denying Sauer's request for attorney fees. Sauer did not establish her need for attorney fees. While she notes the difference between her and Sonnenberg's individual incomes, Sauer also submitted copies of her and Jason Sauer's joint income tax returns for 2007 and 2008, which show the couple earned more than $70,000 per year on average. Sauer also did not prove Sonnenberg unreasonably increased time spent on the case, as the parties provided conflicting testimony about each other's cooperation.

[¶ 21] While the district court should have provided a more detailed explanation for its denial of Sauer's request for attorney fees, its decision is supported by the record. Therefore, we affirm the district court's decision. *See, e.g., Oldham v. Oldham*, 2004 ND 62, ¶ 16, 677 N.W.2d 196 ("From our review of the record, we conclude the trial court did not abuse its discretion in failing to order Daniel Oldham to pay Rebecca Oldham's attorney fees and costs."); *Amsbaugh*, 2004 ND 11, ¶ 45, 673 N.W.2d 601 ("After reviewing the record and arguments presented, we conclude Suzanne Amsbaugh has not shown a need for attorney fees; therefore, we affirm the district court's judgment....").

### IV.

[¶ 22] We conclude the other issues raised by the parties are unnecessary to resolve our disposition of the case. We hold the district court erred as a matter of law by failing to comply with the child support guidelines and reverse and remand the court's calculation of the parties' child support obligations. We affirm the district court's denial of attorney fees.

[¶ 23] KIRK SMITH, S.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

[¶ 24] The Honorable KIRK SMITH, S.J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 25] Priscilla Sauer did not raise in the district court the issue of Terry Sonnenberg's failure to file a motion under N.D.R.Civ.P. 60(b) to retroactively modify child support. Ordinarily issues not raised below cannot be raised on appeal. Nevertheless, as the majority opinion notes, this Court's judicial precedents hold that child support can be modified retroactively only by filing a 60(b) motion. Under the facts of this case had such a motion been filed, I would have affirmed the order of the trial

court retroactively modifying the parties' child support obligations.

[¶ 26] Gerald W. VandeWalle, C.J.